Filed 4/1/21  Beier v. Bank of America, J.A. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY S. BEIER, | |
| Plaintiff and Appellant, | G058753 |
| v. | (Super. Ct. No. 30-2017-00907172) |
| BANK OF AMERICA, N.A., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

John L. Dodd & Associates, John L. Dodd, Benjamin Ekenes; Law Offices of Sanford Parke and Sanford Parke for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION

After failing to make his monthly payments on an almost $1.5 million loan for more than nine years, and only after notice of a trustee's sale had been recorded, Jeffrey S. Beier requested a loan modification from Bank of America, his loan servicer. Bank of America denied Beier's loan modification application because the amount in arrears—almost $1 million—was too high, his monthly income was too low, and an affordable payment could not be created without changing the terms of the loan beyond the limits of the modification program.

Beier then sued Bank of America and Bank of New York, the holder of the note, for violation of the California Homeowners' Bill of Rights (HBOR), negligence, violation of the unfair competition law, and declaratory relief. (Where appropriate, we will refer to the two defendants collectively as the Banks for ease of reading.) All claims were resolved against Beier and in favor of the Banks on demurrer or summary judgment. Beier appealed from the ensuing judgment.

We affirm. Beier failed to state a claim for relief for violation of Civil Code section 2923.7 and for declaratory relief, and there is no reasonable possibility Beier could have amended those causes of action to state a claim for relief. (Further statutory references are to the Civil Code.) The Banks established there was no triable issue of material fact as to the remaining causes of action for violation of section 2923.6, negligence, and violation of the unfair competition law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2005, Beier refinanced a residential property in Coto de Caza with a $1.47 million loan from Countrywide Home Loans, Inc. Beier signed a deed of trust and a promissory note. After August 2007, Beier failed to make any payments on the loan.

In June 2010, a substitution of trustee and assignment of the deed of trust was recorded, assigning the deed of trust to Bank of New York. Bank of America

2

became the successor to Countrywide by merger in 2011, and took over the servicing of Beier's loan.

A notice of default under the deed of trust was recorded in July 2016 showing Beier was $994,151.37 in arrears as of June 30, 2016.

On October 18, 2016, a notice of trustee's sale was recorded, setting November 10, 2016 as the date for the trustee's sale. No sale was held that day or at any time since then. (The parties agree that while Beier's application for a loan modification was pending, the sale was postponed.)

In early November 2016, Beier submitted a loan modification application to Bank of America. Bank of America provided Beier written notice of what additional documentation would be needed to complete its review of the application. Beier submitted additional documentation in December 2016. On December 24, 2016, Bank of America mailed Beier a denial of his loan modification application.

On January 23, 2017, Beier appealed the denial of the application on the ground that Bank of America had miscalculated his income; Beier did not provide any additional information in support of his appeal. On February 21, 2017, Bank of America denied the appeal. On March 8, 2017, Bank of America sent Beier's counsel a copy of the net present value data inputs it had used in reviewing Beier's loan modification application.

Beier sued the Banks in March 2017. Beier's first amended complaint asserted claims for violation of sections 2923.6 and 2923.7, negligence, violation of the unfair competition law, and for declaratory relief. The trial court overruled the demurrer to the negligence claim, sustained it without leave to amend as to the section 2923.7 claim, and sustained it with leave to amend the other claims.

The Banks also demurred to Beier's second amended complaint. The trial court sustained without leave to amend the demurrer to the declaratory relief cause of action, and overruled it with regard to the claims for violation of section 2923.6 and

3

violation of the unfair competition law.  (The demurrer to the second amended complaint did not separately challenge the negligence cause of action.)

The Banks filed a motion for summary judgment, which Beier opposed. One day before the hearing on the motion for summary judgment, Beier filed a motion for leave to file a third amended complaint, and an ex parte application to shorten the time for hearing on that motion.  The trial court denied the motion for leave to amend[1] and granted the Banks' motion for summary judgment.  Judgment was entered, and this appeal followed.

## DISCUSSION

## I.

### THE TRIAL COURT DID NOT ERR IN RESOLVING CERTAIN CLAIMS BY DEMURRER.

"We independently review a ruling on a demurrer to determine whether the pleading alleges facts sufficient to state a cause of action.  [Citation.]  In so doing, '[t]he complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, facts disclosing some right to relief.'  [Citation.]  [¶] 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse.'"  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 61 (*Lueras*).)

---

[1] Beier does not address the denial of the motion for leave to file a third amended complaint on appeal.

4

## A.

*BEIER FAILED TO STATE A CAUSE OF ACTION UNDER SECTION 2923.7.*

### 1.

*Legal Background*

The HBOR was enacted "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (§ 2923.4.)

To further the purposes of the HBOR, the Legislature created the requirement of a single point of contact (SPOC) for the borrower at the mortgage servicer: "(a) When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

"(b) The single point of contact shall be responsible for doing all of the following: [¶] (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. [¶] (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application. [¶] (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. [¶] (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any. [¶] (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

"(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by,

5

or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

"(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor." (§ 2923.7, subds. (a)-(d).)

The SPOC requirement helps prevent borrowers from being "given the run-around, being told one thing by one bank employee while something entirely different is being pursued by another." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 905 (*Jolley*).) However, only a material violation of the SPOC requirement is actionable. (§ 2924.12, subd. (a)(1).) Moreover, if the alleged violation is "corrected and remedied prior to the recordation of the trustee's deed upon sale," there is no liability. (§ 2924.12, subd. (c).)

A material violation of section 2923.7 is one that "'affected a plaintiff's loan obligation or the modification process.'" (*Shupe v. Nationstar Mortg. LLC* (E.D.Cal. 2017) 231 F.Supp.3d 597, 603 (*Shupe*);[2] see also *Hutchins v. Nationstar Mortg., LLC* (N.D.Cal. Sep. 22, 2017, Case No. 16-CV-07067-PJH) 2017 U.S.Dist. Lexis 155637, at *27 [lender conducted a loss mitigation review, processed borrower's loan modification application, and gave borrower an opportunity to appeal the denial; borrower failed to explain how the alleged denial of his right to an SPOC in any way affected his loan obligations or the modification process]; *Dowling v. Bank of Am., N.A.*, (E.D.Cal. Aug. 2, 2017, No. 1:14-cv-01041-DAD-SAB) 2017 U.S.Dist. Lexis 121779, at *5 ["a material violation must interfere with a homeowner's right to be 'considered for' or to have 'a meaningful opportunity' to obtain a loan modification or other foreclosure alternative"]; *cf. Nasseri v. Wells Fargo Bank, N.A.* (2015) 147 F.Supp.3d 937, 945 [the borrower stated a section 2923.7 claim where the SPOC allegedly

---

[2] Both Beier and Bank of America agree that no published California case has reached this holding.

"provided incorrect information regarding what foreclosure prevention alternatives were available to her"]; *Mann v. Bank of Am., N.A.* (C.D.Cal. Feb. 3, 2014, No. 5:13-cv-02293-CAS) 2014 U.S.Dist. Lexis 15111, at *12-*14 [section 2923.7 claim could withstand a motion to dismiss when the plaintiffs alleged that they were "shuffled" from one SPOC to another, although an SPOC was always assigned to the plaintiffs]; *Salazar v. U.S. Bank, N.A.* (C.D.Cal. Apr. 6, 2015, No. ED-CV-14-514-GHK) 2015 U.S.Dist. Lexis 49172 at *13-*16, *17-*18 [motion to dismiss section 2923.7 claim denied where SPOC not appointed for one month after the plaintiff submitted her loan application].)

2.

*Analysis of Beier's Claim*

With regard to the cause of action for violation of section 2923.7, the first amended complaint alleges:

"38. As of the filing of the initial complaint, [Bank of America] had not provided the NPV inputs as requested in Plaintiff's 23 January 2017 letter. Plaintiff, through counsel, tried to contact the Single Point of Contact (SPOC) assigned to Plaintiff's review at Plaintiff's request. Araceli Rainone was assigned as the SPOC and on more than ten (10) occasions each time Araceli Rainone was unavailable. Instead, [Bank of America] would pass the call to one of at least six different [Bank of America] representatives (Jerome, Liam, Sally, Jennifer, Angie or Teresa to name just a few) who were uninformed about both Plaintiff's application or request for the NVP inputs. Each time the [Bank of America] representative would have to review incomplete [Bank of America] system notes and would not verify any status. Each time the representative would promise that the SPOC would call back to inform Plaintiff of the status and each [time] the SPOC did not return the phone call.

"39. HBOR requires that the SPOC would have '. . . access to individuals with the ability and authority to stop foreclosure proceedings when necessary. §2923.7 (b)[(5)]. In the present matter, Plaintiff cannot even communicate with the

7

SPOC and the trustee sale is still active, with a loan modification pending without resolution. [¶] . . . [¶]

"61. HBOR requires servicers to provide a single point of contact (SPOC) '[u]pon request from a borrower who requests a foreclosure prevention alternative.' CC § 2923.7(a). SPOCs may be an individual or a 'team' of people and have several responsibilities; including informing borrowers of the status of their applications and helping them apply for all available loss mitigation options.

"62. Here, Plaintiff specifically requested to speak to his SPOC on numerous occasions. Instead he was shuffled from one unknowledgeable representative to another. On several occasions, a person was not even available, but calls were sent directly to an automated recording. No one could provide Plaintiff with the status of his loan or modification application process, NPV request and why [Bank of America] was trying to foreclose before it had provided Plaintiff with a proper denial. Additionally, many calls were routed to other departments such as collections or customer service. These departments many times could not even see that the Plaintiff had actually submitted a loan modification application.

"63. SPOCs may be an individual or a 'team' of people and have several responsibilities, including: facilitating the loan modification process and document collection, possessing current information on the borrower's loan and application, and having the authority to take action, like stopping a sale. Importantly, each member of a SPOC team must fulfill these responsibilities.

"64. During the time period of the Plaintiff submitting his loan modification, the Plaintiff has never been able to speak with his SPOC and the representatives that were able to speak, had no knowledge of his case and issues. Here, [Bank of America] assigned a ghost and called it a SPOC.

"65. Plaintiff was told by several [Bank of America] representatives false and misleading information, received 'conflicting information by multiple

8

representatives', and was on several times told it would be simpler to submit a new loan modification application.

"66.  Here, the actions of the Defendants rise to the level of violating CC §2923.7."

The trial court did not err in concluding the first amended complaint failed to allege any material violation of section 2923.7.  We agree with the analysis and conclusions of *Shupe, supra*, 231 F.Supp.3d 597, and hold that to meet the materiality requirement of section 2924.12, subdivision (a)(1), a plaintiff must allege that a violation of section 2923.7 affected the plaintiff's loan obligation or the loan modification process.  Beier failed to do so here.  Beier's alleged inability to speak directly with his SPOC did not affect Beier's loan obligation or the loan modification process.  Specifically, Beier does not allege he failed to make his loan payments or failed to lower his arrearages based on anything his SPOC or anyone else at Bank of America told him or failed to tell him.

Further, Beier does not allege that the loan modification process was in any way affected by his inability to speak with his SPOC on any occasion.  Beier alleges that he could not speak directly with his SPOC on many occasions, and that the people he spoke with did not have full information regarding his loan modification application.  Yet Beier fails to allege that this affected his ability to provide needed information to Bank of America, or played any role in Bank of America's denial of his application.  (As explained in detail, *post*, that denial was based on attributes of his arrearages and income that had nothing to do with his communications with the SPOC.)

To the extent Beier alleges he received conflicting or misleading information, he does not allege this information in any way affected the application he filed or his actions during the application process or the appeal process.  Any such conflicting or misleading information was corrected, despite any alleged failure to properly assign an SPOC.  Beier admittedly received information regarding the denial of

9

his claim and the availability of an appeal process, and availed himself of that appeal process.

3.

*The Trial Court Did Not Err by Denying Leave to Amend.*

As note *ante*, when a demurrer is sustained without leave to amend, we review that decision for abuse of discretion, and determine "whether there is a reasonable possibility that the defect can be cured by amendment." (*Lueras, supra*, 221 Cal.App.4th at p. 61.)

Beier fails to establish the trial court erred by sustaining the demurrer to the cause of action for violation of section 2923.7 without leave to amend. In opposition to the demurrer to the first amended complaint, Beier argued: "But if the Court finds that the demurrer is well taken as to any cause of action, Plaintiff hereby moves for leave to amend this complaint to allege any facts the Court finds lacking or to clarify any unclear or ambiguous allegations."

In his opening brief on appeal, Beier argues: "Even if Beier's section 2923.7 claim in the first amended complaint failed in some technical respect, such as a request for injunctive relief in the prayer of the complaint, such a technicality would be easily correctable by amendment. Beier sought leave to amend. . . . At a minimum, the court should have granted Beier leave to amend this cause of action. [¶] Denial of leave to amend is an abuse of discretion unless the complaint shows on its face it is incapable of amendment; '[l]iberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given.' [Citation.] Beier may state what additional facts could be pleaded, or how any defect could be cured, for the first time on appeal. [Citation.]"

The face of the first amended complaint showed that any violation of section 2923.7 was either immaterial or had been corrected. There is no reasonable possibility that the defects in this cause of action could be corrected by amendment.

10

Therefore, the trial court did not err by sustaining the demurrer to the section 2923.7 cause of action without leave to amend.

B.

*BEIER FAILED TO STATE A CAUSE OF ACTION FOR DECLARATORY RELIEF*

1.

*Legal Background*

California law does not permit borrowers to preemptively sue to block a nonjudicial foreclosure of their property. "'California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing "beneficiary" or beneficiary's "agent" to initiate and pursue foreclosure.' [Citation.] California's nonjudicial foreclosure scheme has an ""'exhaustive nature,'"" which is intended ""'(1) to provide the [beneficiary-creditor] with a quick, inexpensive and efficient remedy against a defaulting [trustor-debtor]; (2) to protect the [trustor-debtor] from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.'"" [Citations.] A preemptive action 'seeks to create "the additional requirement" that the foreclosing entity must "demonstrate *in court* that it is authorized to initiate a foreclosure" before the foreclosure can proceed,' a process not contemplated by the nonjudicial foreclosure statutes. [Citation.] The *Jenkins* [*v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497] court distinguished a factual situation involving misconduct in a nonjudicial foreclosure sale, which can provide a basis for a valid postforeclosure cause of action, from the plaintiff's preemptive action, which improperly sought to stop or delay the nonjudicial foreclosure process." (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 741-742; see *Jenkins v. JPMorgan Chase Bank, N.A., supra*, 216 Cal.App.4th at pp. 509-513; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154; see also *Petrovich v. Ocwen Loan Servicing, LLC* (9th Cir. 2017) 716 Fed. Appx. 614, 616 [California law

11

bars wrongful foreclosure claim filed before nonjudicial foreclosure occurred]; *Fathi v. J.P. Morgan Chase Bank, N.A.* (9th Cir. 2016) 671 Fed. Appx. 990 [borrower "lacked standing to bring a preemptive suit to challenge Chase's authority to foreclose"]; *Bryant v. J.P. Morgan Chase Bank, N.A.* (9th Cir. 2016) 671 Fed. Appx. 985, 986 [borrower lacked standing to bring preemptive suit to challenge lender's authority to foreclose]; *Demarest v. HSBC Bank USA, N.A.* (C.D.Cal., Aug. 8, 2017, Case No. CV 16-05088-AB) 2017 U.S.Dist. Lexis 211092, p. *9 ["By now it is well-understood that California law does not permit a borrower to bring a suit to preemptively challenge an entity's authority to foreclose"].)

2.

*Analysis of Beier's Claim*

Beier sought declaratory relief based on a claim that the alleged transfer of the note to Bank of New York was void and therefore unenforceable. Beier alleges the following regarding the declaratory relief claim in the second amended complaint:

"109. Plaintiff alleges that the Plaintiff's Loan Note is void, and thus unenforceable by any of the Defendants.

"110. Plaintiff alleges there is a broken chain of transfer of the Plaintiff's loan note because the loan note itself was never properly endorsed and delivered to its intended recipients according to the requirements of endorsement and delivery of a negotiable instrument.

"111. Specifically, Plaintiff alleges that after his designated agent conducted an investigation as to the chain of transfer, Plaintiff learned and herein alleges that his loan note was never endorsed by either Countrywide Home Loans, Inc. or [Bank of America], and was never delivered to Defendant [Bank of New York].

"112. Thereby rendering [Bank of New York] without any power to enforce the negotiable instrument. Moreover, the Plaintiff's investigation as to the chain of transfer of the Plaintiff's loan note has revealed other substantial evidence to support

12

the fact that no Defendant can enforce the negotiable instrument loan and that Defendant [Bank of New York] in actuality does not hold the Plaintiff's loan note.

"113.  Here, Plaintiff is informed and believes that Defendant [Bank of New York] is a stranger to Plaintiff's loan and therefore cannot be a party to that promissory note.

"114.  Further, THE TRUST that purports to hold the Plaintiff's loan was required by law, pursuant to 26 CFR § 1.860F-2(a)(2), to list the loan on THE TRUST list of assets.

"115.  However, the list of assets filed with the United States Security and Exchange Commission and a review of the public records reveals that Plaintiff's loan was never listed on the schedule of assets that formed the corpus of THE TRUST.  Simply stated, the Plaintiff's loan is not in the TRUST and the Defendants do not have any authority to act on behalf of the loan as they are strangers to the loan.

"116.  As Defendants have therefore incorrectly based their entire purported authority over the Plaintiff's property solely and exclusively on an assignment of a 'deed only,' where such an assignment is void.

"117.  Further, Defendants base their purported authority over Plaintiff's property solely and exclusively on an assignment from MERS to [Bank of New York] on 07 June 2010; but this assignment breaks the two (2) year requirement for a tax exempt REMIC trust pursuant to 26 USCS § 860G(a)(4).

"118.  Here, Plaintiff alleges that Defendants did not ratify the assignment as a late conveyance into THE TRUST on account of federal income tax consequences.

"119.  THE TRUST was bound to comply with 26 USCS § 860G(a)(4) and as a result any conveyance of any loan into THE TRUST was void if it occurred beyond two (2) years of the trust's 'Startup Day,' 29 April 2005.

"120.  Since the Cut-off Date was 01 April 2005, Closing Date was 29 April 2007, and Startup Day was 29 April 2005, Plaintiff alleges that the purported

13

07 June 2010 conveyance of the Plaintiff's loan to THE TRUST came five years after THE TRUST had closed thereby rendering the conveyance void un-ratified.

"121.  Plaintiff further alleges that no Defendant ever ratified the late attempt to convey the loan into THE TRUST as such a ratification would have subjected THE TRUST to 'unqualified asset' taxation for the amount of the loan in the entirety, and further would have possibly subjected THE TRUST to a tax liability greater than $2 Billion.

"122.  Thusly, Plaintiff seeks declaratory relief, and asks this court to declare the Plaintiff's Loan Note as void on account of (i) the applicable statute of limitations as to the enforceability of a negotiable instrument having passed, and (ii) the purported conveyance of the Plaintiff's loan to the REMIC trust being void as supported by the provisions found in the federal income tax code."

The law in California is clear:  A party may not enjoin a nonjudicial foreclosure based on a claim that the assignment of the deed of trust is voidable. "'[A] preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure,' [is] invalid and subject to demurrer."  (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 40.) Permitting a lawsuit to determine whether a creditor is authorized to proceed with a nonjudicial foreclosure "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."  (*Gomes v. Countrywide Home Loans, Inc., supra*, 192 Cal.App.4th at p. 1155; see *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 160 ["the Legislature intended to preclude borrowers from seeking to enjoin a foreclosure for reasons other than those expressly authorized"]; *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814-815; *Jenkins v. JPMorgan Chase Bank, N.A., supra*, 216 Cal.App.4th at p. 513; *cf. Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 942-943, 935 [borrower may sue for wrongful foreclosure based on void

14

assignment; court specified it was not ruling on whether borrower could preempt nonjudicial foreclosure] (*Yvanova*).) The trial court did not err in sustaining the Banks' demurrer on the declaratory relief cause of action.

Beier invites this court to reject California law in favor of a federal district court case holding that equitable relief should be available preforeclosure. (*Lundy v. Selene Fin., LP* (N.D.Cal. Mar. 17, 2016, No. 15-cv-05676-JST) 2016 U.S. Dist. Lexis 35547, at *19 (*Lundy*).) We decline to do so.

The *Lundy* opinion was issued after *Yvanova, supra*, 62 Cal.4th 919, and noted that it was attempting to predict how the Supreme Court would apply *Yvanova* in the preforeclosure context. (*Lundy, supra*, 2016 U.S.Dist. Lexis 35547 at *28.) *Lundy* noted that the Supreme Court had granted review in and held two cases pending review in *Yvanova*. In both of those cases, the Supreme Court transferred the cases back to the Courts of Appeal for decision in light of *Yvanova*. Both courts again affirmed the trial courts' dismissal of claims seeking to enjoin nonjudicial foreclosures before-the-fact. (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802; *Keshtgar v. U.S. Bank, N.A.* (Aug 8, 2016, B246193) [nonpub. opn.].)

Beier also argues that he has the right to challenge the assignment of the deed of trust preforeclosure because the assignment was void, not merely voidable. Again, California law is squarely against Beier. (*Kalnoki v. First American Trustee Servicing Solutions, LLC, supra*, 8 Cal.App.5th at p. 43; *Mendoza v. JPMorgan Chase Bank, N.A., supra*, 6 Cal.App.5th at pp. 813-816; see *Gonzalez v. J.P. Morgan Chase Bank, N.A.* (2017) 228 F.Supp.3d 277, 288 [motion to dismiss granted where complaint failed to include allegations that assignments were void rather than voidable].) The case on which Beier relies for this argument, *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, has been rejected by more recent authority (see, e.g., *Saterbak v. JPMorgan Chase Bank, N.A., supra*, 245 Cal.App.4th at p. 815, fn. 5), in part because the

15

case on which *Glaski* relied has been overturned (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178 [9 N.Y.S.2d 312]).

3.

*The Trial Court Did Not Err in Denying Leave to Amend.*

As noted *ante*, when a demurrer is sustained without leave to amend, we review that decision for abuse of discretion, and determine "whether there is a reasonable possibility that the defect can be cured by amendment." (*Lueras, supra*, 221 Cal.App.4th at p. 61.)

In opposition to the demurrer to the second amended complaint, Beier argued: "But if the Court finds that the demurrer is well taken as to any cause of action, plaintiff hereby moves for leave to amend this complaint to allege any facts the Court finds lacking or to clarify any unclear or ambiguous allegations."

As to the declaratory relief claim, Beier cites *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 562 (*Sciarratta*) in support of his argument that leave to amend should have been granted. That case, like *Yvanova*, arose in the context of a claim for wrongful foreclosure asserted *after* the foreclosure had taken place. Beier cannot amend his complaint to allege the nonjudicial foreclosure has already occurred. Further, the *Sciarratta* court held that the plaintiff could state a claim based on a void transfer of the deed of trust where the original holder of the deed purported to transfer the deed in full to two separate entities at two different times. (*Sciarratta, supra*, at pp. 563-565.) Beier makes no claim that he would be able to amend his complaint in similar fashion to allege a void, rather than a voidable, assignment. Because there is no reasonable possibility that Beier could amend his cause of action for declaratory relief to state a cause of action, the trial court did not err by denying leave to amend.

16

## II.

### THE TRIAL COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON THE REMAINING CLAIMS.

"We review orders granting summary judgment de novo. [Citation.] Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] [¶] We consider all of the evidence presented by the parties (except for evidence which the trial court properly excluded),[3] liberally construe the evidence in support of the party opposing summary judgment, and resolve all doubts about the evidence in that party's favor. [Citation.] We must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment." (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 179-180.)

### A.

#### *SUMMARY JUDGMENT ON THE SECTION 2923.6 CLAIM WAS PROPER.*

In the second amended complaint, Beier claimed that the Banks violated section 2923.6 by: (1) dual tracking by resetting the date of the foreclosure sale while the loan modification application was still under review, in violation of section 2923.6, subdivision (c); and (2) failing to include the property value used to calculate the net

---

[3] Neither party raises any argument on appeal regarding the trial court's rulings on the admissibility of evidence. On appeal, we will consider only the evidence presented by the parties to which an objection was not sustained.

17

present value of the property and failing to advise Beier he could obtain all net present value inputs by written request, in violation of section 2923.6, subdivision (f)(3).[4]

1.

*Section 2923.6, Subdivision (c)—Dual Tracking*

The Banks established that they did not violate section 2923.6, subdivision (c) by postponing the date of the foreclosure sale.  That statute provides that if a borrower submits a complete loan modification application, the loan servicer "shall not record a notice of default or notice of sale, or conduct a trustee's sale" until certain conditions have been met.  (§ 2923.6, subd. (c).)  A notice of default was recorded on July 1, 2016, and a notice of trustee's sale was recorded on October 18, 2016, both before Beier submitted his loan modification application on November 1, 2016.  No trustee's sale has been conducted.  Based on the undisputed material facts, the Banks did not violate section 2923.6, subdivision (c).

During the loan modification application review period, the Banks postponed the trustee's sale from November 10, 2016 to March 16, 2017.  No new notice of trustee's sale was recorded.  The statute specifically prohibits (1) recording a notice of default, (2) recording a notice of sale, or (3) conducting a trustee's sale.  Based on the unambiguous language of section 2923.6, subdivision (c), the *postponement* of the trustee's sale did not violate that statute.

---

[4]  Beier's second amended complaint also alleged the Banks violated section 2923.6 by failing to include instructions on how to initiate an appeal in the letter denying his request for a loan modification, using the wrong dollar amount for Beier's monthly income in denying the loan modification request, failing to permit him to correct the income amount, and failing to instruct him on how to appeal the decision.  (§ 2923.6, subd. (f)(1).)  The trial court granted the Banks' motion for summary judgment on those claims.  Beier does not address those portions of the summary judgment in his appellate briefs, and has thereby forfeited the right to challenge them.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [failure to raise an argument in appellate briefs forfeits it].)

18

Beier cites *Jolley, supra*, 213 Cal.App.4th at page 904, which noted that section 2923.6, subdivision (c) was intended to avoid a situation where the lender pursues foreclosure while communicating with the borrower regarding a loan modification. The Banks' conduct here actually ensured that the statute's goal would be achieved. By postponing the trustee's sale, the Banks did not pursue foreclosure while considering Beier's loan modification application. Nothing in the HBOR prohibits the lender from preserving its right to pursue foreclosure *after* the application has been denied. The present case stands in contrast to *Foronda v. Wells Fargo Home Mortg., Inc.* (N.D.Cal., Nov. 26, 2014, Case No. 14-CV-03513-LHK) 2014 U.S.Dist. 165676, at *16-*17, in which the district court found a violation of section 2923.6, subdivision (c) when the lender scheduled a trustee's sale *after* the borrower applied for a loan modification and then refused to postpone the sale.

In his appellate reply brief, Beier argues: "Even if respondents postponed the sale on their own after the lawsuit was filed, Beier still could obtain injunctive relief preventing respondents from actually conducting a future foreclosure sale while Beier's loan modification application was pending." This argument shows why the dual-tracking claim lacks merit. Beier's loan modification application is not pending, and has not been pending since before this lawsuit was filed. Therefore, there is no threat that a foreclosure sale will be conducted while a loan modification application is pending.

2.

*Section 2923.6, subdivision (f)(3)—Net Present Value Inputs*

Section 2923.6, subdivision (f) provides: "Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following: [¶] . . . [¶] (3) *If the denial is the result of a net present value calculation*, the monthly gross income and property value used to calculate the net present value and a statement that the borrower

19

may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer." (Italics added.)

In the minute order granting the motion for summary judgment, the trial court found: "Plaintiff is hyper focused on the fact that the Net Present Value (NPV) numbers were never provided (or improperly provided so as to not be discernable). But Defendants have shown that the loan modification application was denied because Plaintiff did not qualify for relief under any of the modification programs because his principal balance exceeded the program limits or because an affordable payment based on Plaintiff's numbers could not be obtained. The letter made this clear."

The Banks offered admissible evidence that there was no dispute of material fact regarding this alleged violation of the HBOR because the denial of Beier's loan modification application was not the result of a net present value calculation. In *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, the court explained the role of the net present value calculation in a loan modification application, pursuant to federal Treasury Department guidelines:

"First, the borrower had to meet certain threshold requirements, including that the loan originated on or before January 1, 2009; it was secured by the borrower's primary residence; *the mortgage payments were more than 31 percent of the borrower's monthly income; and, for a one-unit home, the current unpaid principal balance was no greater than $729,750.*

"Second, the servicer calculated a modification using a 'waterfall' method, applying enumerated changes in a specified order until the borrower's monthly mortgage payment ratio dropped 'as close as possible to 31 percent.'

"Third, the servicer applied a Net Present Value (NPV) test to assess whether the modified mortgage's value to the servicer would be greater than the return on the mortgage if unmodified. The NPV test is 'essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into

20

foreclosure.' [Citation.] If the NPV result was negative—that is, the value of the modified mortgage would be lower than the servicer's expected return after foreclosure— the servicer was not obliged to offer a modification. If the NPV was positive, however, the Treasury directives said that 'the servicer MUST offer the modification.'" (*Wigod v. Wells Fargo Bank, N.A., supra*, 673 F.3d at pp. 556-557, fn. omitted, italics added; see *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1300-1302.)

Beier's application was denied because (1) the total unpaid principal balance was too high; (2) Beier's monthly income was too low; or (3) an affordable payment could not be created without changing the terms of the loan beyond the program limits. The issue of net present value was never reached.

3.

*Additional Issues Raised on Appeal*

First, Beier argues that the trial court erred in granting summary judgment because Bank of America's denial letter violated section 2923.6, subdivision (f)(2)'s requirement that "[f]ollowing the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following: [¶] . . . [¶] (2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance." Beier's second amended complaint did not allege a violation of section 2923.6, subdivision (f)(2), and nowhere contains a reference to that subdivision or a mention of the phrase "investor disallowance."

On appeal, we look to the pleadings to identify the issues framed for summary judgment. "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.'" (*Conroy v. Regents of the University of California* (2009) 45 Cal.4th 1244, 1250.) Beier argues that because the Banks raised the denial letter's compliance with the HBOR as a material issue in the motion for summary judgment, all issues related to HBOR

21

compliance were at issue, even if they had not been alleged in the second amended complaint.  Beier is wrong.  (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["A party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings"].)

The relevant part of the denial letter states that Beier's loan was not eligible for the Bank of America loan modification program because "[t]he investor or guarantor of your loan has not approved a modification because an affordable payment cannot be created without changing the terms of your loan beyond the limits of the program.  The name of the investor or guarantor is the Bank of New York Mellon as Trustee on Behalf of Bear Stearns ALT-A Trust 2005-4."  Beier claims this was a "conclusory statement from the bank."  Bank of America claims this was sufficient because it went "beyond merely stating that the investor did not want to approve the modification" and provided "a specific reason for disapproval."  (See *Gordon v. U.S. Bank* (C.D. Cal., Aug. 28, 2017, No. CV-15-5537-DMG) 2017 U.S.Dist. Lexis 222624 [denial letter stated the borrowers' "then-'current debt to income ratio [wa]s already below 31%, the minimum amount allowed by the [modification] program'"; summary judgment properly granted]; see also *Potocki v. Wells Fargo Bank, N.A.* (2019) 38 Cal.App.5th 566, 570 ["The explanation that '[we] do not have the contractual authority to modify your loan because of limitations in our servicing agreement,' does not suffice as an explanation—at least for purposes of a demurrer"].)  We agree with the Banks that Bank of America provided a sufficient explanation of its decision to deny the loan modification application.

Second, Beier argues on appeal that despite the fact the trial court sustained the demurrer to the cause of action for violation of section 2923.7 without leave to amend, the court should not have entered judgment against Beier because a triable issue of fact exists as to whether the Banks' conduct violated section 2923.7.  Beier offers no legal authority in support of his argument and we therefore do not consider it further.

22

B.

*NEGLIGENCE*

The second amended complaint alleged that Bank of America owed a duty of care to Beier to act reasonably in its review of Beier's application for a loan modification. Beier alleged that Bank of America breached its duty of care by its "failure to properly calculate the NPV through the use of accurate data inputs for Plaintiff's gross monthly income and failure to provide Plaintiff . . . a means to correct the values which lead to the denial of Plaintiff's application."

The trial court granted the Banks' motion for summary judgment on the negligence claim, finding Bank of America did not owe Beier a duty of care, and that, in any event, Bank of America had not breached any such duty. "The court finds that Defendants do not owe Plaintiff a duty of care. [¶] Further, the court finds that even if there were a duty, Defendants have shown that there are no triable issues of fact to dispute that Defendants were not negligent in reviewing Plaintiff's application for a loan modification or in providing him an appeal opportunity."

1.

*Bank of America Did Not Owe Beier a Duty of Care.*

Beier relies on *Jolley, supra*, 213 Cal.App.4th at page 898, in which the appellate court refused to apply the general rule that the lender does not owe a duty of care to the borrower as long as its role in the transaction does not exceed the normal scope of its role as a lender of money. A line of cases follows *Jolley*'s analysis and reasoning when the negligence case was resolved by demurrer. (See *Weimer v. Nationstar Mortgage, LLC* (2020) 47 Cal.App.5th 341, 362-363, review granted July 22, 2020, S262024; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1181-1183; *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 948-949.)

23

In *Lueras, supra,* 221 Cal.App.4th at page 67, however, another panel of this court rejected *Jolley*: "We disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives. . . . [¶] We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* [*v. Irving* (1958) 49 Cal.2d 647] factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." (See *Sheen v. Wells Fargo Bank, N.A.* (2019) 38 Cal.App.5th 346 [agreeing with and applying *Lueras*], review granted Nov. 13, 2019, S258019.)

2.

*Bank of America Did Not Breach Any Duty of Care.*

The Banks offered undisputed evidence that the deduction of wages and salaries and depreciation from Beier's monthly income calculation was the industry standard, and not a breach of any alleged duty to Beier. Beier challenged this evidence, but did not offer any disputed material evidence to contradict it; the trial court denied Beier's evidentiary objections.

24

The Banks offered undisputed material evidence that Beier was not qualified for any loan modification program.[5]  Of the five available loan modification programs, the unpaid principal balance was too high to qualify for two; the $24,307.33 monthly income as calculated by Bank of America was too low for two; and one program was unavailable because an affordable payment could not be created without changing the terms of the loan beyond the program limits.  Bank of America's letter explaining why Beier did not qualify for any loan modification programs included an entire section entitled "How to request a re-evaluation" which provided specific contact information and advised Beier he had 30 calendar days to contact Bank of America and provide any additional information.

If Beier's argument is that Bank of America erred by using the *higher* number as Beier's monthly income, and should have used the *lower* number Beier presented, there can be no concomitant breach of a duty that caused harm, because the loan modification denial notes that Beier failed to qualify for two of the modifications because the higher number was not sufficient.

3.

*To the Extent the HBOR Creates a Duty of Care by Bank of America to Beier, Our Holding that Summary Judgment Was Properly Granted on the Section 2923.6 Claim Establishes No Duty Was Breached.*

The second amended complaint also alleged that the HBOR "imposes a statutory duty requiring [Bank of America] to act in the best interest of all parties when they agree to review a loan modification application, to implement a loan modification, or a workout plan."  In his opening appellate brief, Beier argues that "the HBOR requirements provide a statutory standard of care.  Accordingly, just as there is a triable

---

[5]  Although Beier claimed this was disputed, he does not dispute the contents or accuracy of the letter; he disputes whether Bank of America used the correct NPV inputs, informed him how to obtain those inputs, and advised him how to appeal.

25

issue concerning whether defendants materially violated section 2923.6; there also is a triable issue concerning whether such conduct fell below the duty of reasonable care in connection with review of Beier's loan modification application."

As explained *ante*, there is no triable issue of material fact regarding a material violation of section 2923.6. Therefore, Bank of America could not have breached any duty imposed by the HBOR, and summary judgment was properly granted on the negligence claim.

C.

*UNFAIR COMPETITION LAW*

Beier acknowledges that his claim for violation of the unfair competition law is dependent upon the viability of his claims for violation of section 2923.6 and negligence: "[B]ecause there exists a triable issue concerning Beier's section 2923.6 and negligence claims . . . there equally exists a triable issue concerning Beier's section 17200 claim." In light of our conclusions, *ante*, we therefore conclude that the trial court did not err in granting summary judgment of the unfair competition claim.

**DISPOSITION**

The judgment is affirmed. Respondents to recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

26